THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LAWRENCE HARRIS, Defendant-Appellant.

First District (4th Division)  No. 1—92—0024

Opinion filed February 17, 1994.

Rita A. Fry, Public Defender, of Chicago (Carol J. Milder, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Eileen O'Neill and Kevin J. Golden, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAHILL delivered the opinion of the court:

The defendant, Lawrence Harris, was convicted of residential burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19—3(a)) following a jury trial. At his sentencing hearing the court found he was subject to a mandatory Class X sentence. The court sentenced him to 15 years in the Illinois Department of Corrections. On appeal Harris contends error occurred when (1) the court allowed in evidence a statement the State did not disclose before trial; (2) the court did not allow defense counsel to describe in opening statement the circumstances surrounding the prior conviction of a witness; (3) the State made improper remarks in opening statement and closing argument and elicited improper testimony during trial; (4) he was not proven guilty beyond a reasonable doubt; (5) the State failed to notify him in the charging instrument that it would seek an enhanced sentence upon conviction; (6) the court improperly sentenced him as a Class X offender because the State failed to establish that he was convicted of prior felonies offered in aggravation at sentencing; and (7) the sentence was excessive. We affirm.

Thelma McCaster Young, the defendant's sister, came home from work at 3:45 p.m. on March 15, 1991. She noticed her back door was open and damaged. Inside the house she discovered her stereo speakers were gone. Money she kept in a glass jar was also missing. Young then went next door to ask a neighbor if he had seen anyone enter the house.

Sylvester McDonald, Young's neighbor, told her that he saw Harris enter her house and leave with two speakers at 3:15 p.m. that day. He did not call the police because he knew Harris was Young's brother. McDonald had seen Harris at Young's house earlier when Harris lived with Young and her family for two weeks in February 1991.

Young telephoned the police and reported the burglary. When her husband and daughter came home, the three of them went to look for Harris. They found him at Mary Lane's house and called the police. Lane is the grandmother of Harris' daughter. Police officer Baumann arrived and drove Harris to the station, where he was arrested for burglary. At trial Officer Baumann testified that Harris said he would get Young's "stuff" back if she would drop the charges. Harris called one witness, Mary Lane, in his case in chief. Lane testified that Harris arrived at her house after 3 p.m. on March 15,

1991. She knew he arrived after her granddaughter came home from school at 3 p.m., but she could not state the exact time Harris arrived. She said he was alone and did not have speakers with him. The speakers and the money were never recovered.

The jury found Harris guilty of residential burglary. The court found he qualified for a Class X sentence under section 5—5—3(c)(8) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(8)) and sentenced him to 15 years in the Illinois Department of Corrections.

Harris first argues on appeal that he was prejudiced because the State violated discovery Rule 412(a)(ii) (134 Ill. 2d R. 412(a)(ii)), which requires disclosure upon request of any statement made by the accused.

After the jury was chosen, the State disclosed for the first time that when Harris was arrested he told Young, "I will not only steal your speakers, I will steal your mother-fucking life." The State learned of the statement when the prosecutor interviewed Young on the morning of trial. The State then notified the defense of the statement. Defense counsel objected to the late notice. The trial judge agreed that the State should have learned of the statement before the morning of trial and stated he was inclined to impose a sanction. The judge then asked the defense how the statement prejudiced the defendant. Defense counsel replied that she would have spoken to Harris about the statement. The court granted a 15-minute recess so counsel could speak to Harris and Young.

■ Once a court finds a discovery violation, it may order further discovery, grant a continuance, exclude the evidence, or impose any sanction which it finds appropriate under the circumstances. (134 Ill. 2d R. 415(g).) The preferred sanction is a recess or a continuance if either would protect the defendant from surprise or prejudice. *People v. Aguilar* (1991), 218 Ill. App. 3d 1, 9, 578 N.E.2d 109.

Here the court granted a recess so defense counsel could speak to Harris about the alleged statement. At trial defense counsel attacked Young's credibility regarding the statement. She asked Young on cross-examination, "And, isn't it true, Ms. Young, that you have told your attorney, the State's attorney, for the first time this morning about this alleged statement that your brother made as he was being arrested?" Young replied, "Maybe it was the first time, I am not sure." We believe the court did not abuse its discretion when it determined that a recess was sufficient to protect Harris from the prejudice of late notice.

■ Harris next argues the court erred when it did not allow the defense in opening statement to describe the circumstances of Young's prior conviction.

In opening statement the prosecutor told the jury that Young had been convicted of a crime and that "she was involved in an abusive relationship with a man that she was living with. There was a struggle in the house. She grabbed a gun that was in the home and she fired that gun. He was shot and killed. She spent some time in jail as a result of that unfortunate incident." Defense counsel did not object, but instead attempted to "clarify" the circumstances during the defense opening by stating, "[The State is] going to tell you about the unfortunate circumstances when they prosecuted this woman five, six years ago for a murder when she shot somebody in cold blood." The judge sustained the prosecutor's objection and when defense counsel continued to argue, threatened to hold counsel in contempt if she continued the remarks.

We do not condone the comments made by the prosecutor, but defense counsel's failure to object does not allow her to pick up an improper argument where the prosecutor left off. Defense counsel's statement that Young shot someone in "cold blood" constituted argument and was improper. While the prosecutor refrained from labeling the crime of which the victim was convicted, the defense did not. We find the court did not abuse its discretion when it limited discussion of the prior conviction.

■ Third, Harris contends he was denied a fair trial because the State made three improper remarks during opening statement and closing argument and elicited improper testimony during the direct examination of Officer Baumann. The record shows that Harris failed to object to the statements and testimony either at trial or in his post-trial motion for a new trial. The issue is waived. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

■ Fourth, Harris contends the State failed to prove guilt beyond a reasonable doubt. The standard on appeal is whether a rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense beyond a reasonable doubt. (*People v. Jimerson* (1989), 127 Ill. 2d 12, 43-44, 535 N.E.2d 889.) Identification of the defendant by a single witness is sufficient to sustain a conviction if the witness saw the accused under circumstances which would permit a positive identification. *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.

Young's neighbor testified that he saw Harris enter Young's home and leave with two speakers at 3:15 p.m. on March 15, 1991. He had seen Harris before. He did not call the police because he knew Harris was Young's brother. The only witness for the defense, Mary Lane, testified that Harris came to her house after 3 p.m. that day, but she

did not know what time he arrived. Harris was unable to establish his whereabouts at 3:15 p.m. Officer Baumann testified that Harris offered to get Young's "stuff" back if she would drop the charges. We find that evidence viewed in a light most favorable to the prosecution could lead a rational jury to find Harris guilty of residential burglary.

■ Fifth, Harris contends the State did not provide notice in the charging instrument that it would seek an enhanced sentence upon conviction. Harris was charged and found guilty of residential burglary, a Class 1 offense. The State offered without objection certified copies at sentencing of three prior felony convictions Harris committed after 1977. The trial court then sentenced Harris as a Class X offender as required under section 5—5—3(c)(8) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(8)). Harris argues he was improperly sentenced as a Class X offender because the State failed to follow the requirements of section 111—3 of the Code of Criminal Procedure, which states:

"When the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state such prior conviction so as to give notice to the defendant. *** '[E]nhanced sentence' means a sentence which is increased by a prior conviction from one classification of offense to another higher level classification of offense ***; it does not include an increase in the sentence applied within the same level of classification of offense." Ill. Rev. Stat. 1991, ch. 38, par. 111—3(c).

The argument ignores what took place at sentencing. The State did not seek an "enhanced sentence." At the sentencing hearing it argued that Harris was eligible to be sentenced as a Class X offender under section 5—5—3(c)(8) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(8)). This section mandates the court to sentence a defendant as a class X offender when he is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater class felony in Illinois. Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(8).

Section 111—3 excludes the case where a court increases the sentence because of prior convictions while the classification of the offense remains the same. Section 111—3 does not apply to this case because the court did not increase the defendant's sentence based on a change in classification. (See *People v. Cole* (1993), 256 Ill. App. 3d 1.) There the court stated:

"[Section 111—3] applies to those situations where the enhanced Class X sentence is triggered by defendant's prior conviction, and the class of the offense is increased to a higher classification. Where the sentence, but not the classification of offense, is enhanced by defendant's prior convictions, there is no statutory requirement that the State notify defendant of its intention to seek an enhanced penalty. Defendant was sentenced as a Class X offender in compliance with *People v. Contreras* (1993), 241 Ill. App. 3d 1023, 609 N.E.2d 949." *Cole*, 256 Ill. App. 3d at 6.

In *Contreras* the court found that the provisions of section 111—3

"apply only to those situations where the State intends to enhance the penalty by raising the classification of the offense due to a prior conviction." The court stated that section 111—3 "explicitly excludes those situations *** where the sentence is increased because of a prior conviction, but the classification of the offense remains the same." *Contreras*, 241 Ill. App. 3d at 1025-26, 609 N.E.2d at 950.

On November 29, 1993, our supreme court allowed Harris' petition for leave to appeal and ordered that we vacate our previous holding in this case and reconsider it in light of *People v. Levin* (1993), 157 Ill. 2d 138. In support of the petition to the supreme court, Harris relied on language from page 10 of the court's slip opinion in *Levin* regarding section 111—3 of the Code of Criminal Procedure. On the same day that our supreme court ordered the decision in this case vacated, it also modified its opinion in *Levin*. The modified opinion does not contain any language regarding section 111—3 of the Code of Criminal Procedure, nor does it relate to any other issue involved here. (See *People v. Levin* (1993), 157 Ill. 2d 138, 623 N.E.2d 317.) So, upon reconsideration, we do not change our original holding.

■ Sixth, Harris argues the court improperly sentenced him as a Class X offender because the State failed to prove the commission dates of his prior felonies. Harris has waived this issue because he failed to raise it at the sentencing hearing. *People v. Williams* (1992), 149 Ill. 2d 467, 599 N.E.2d 913.

■ Finally, Harris argues that his sentence was excessive because he committed a nonviolent crime. We will not alter the sentence on review unless the court abused its discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) The court considered the nature of the offense and the defendant's numerous previous convictions for the same offense, and heard the defendant's testimony at the sentencing hearing. We find no basis to disturb the sentence on appeal.

We affirm the judgment of the trial court. As part of our judgment, we grant the State's request and assess the defendant $75 in costs for defending this appeal pursuant to *People v. Agnew* (1985), 105 Ill. 2d 275, 473 N.E.2d 1319, and *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194.

Affirmed.

JOHNSON and THEIS, JJ., concur.